**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

FILED

2016 DEC -8  PM 3:04

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

**MONKEYMEDIA, INC.,**
                    **Plaintiff,**

**-vs-**

**TWENTIETH CENTURY FOX HOME**
**ENTERTAINMENT, LLC,**
**PARAMOUNT HOME**
**ENTERTAINMENT, A DIVISION OF**
**PARAMOUNT PICTURES**
**CORPORATION, WARNER HOME**
**VIDEO, INC., UNIVERSAL STUDIOS**
**HOME ENTERTAINMENT, A**
**DIVISION OF UNIVERSAL STUDIOS**
**INC., BUENA VISTA HOME**
**ENTERTAINMENT, INC. d/b/a WALT**
**DISNEY STUDIOS HOME**
**ENTERTAINMENT, and LIONS GATE**
**ENTERTAINMENT INC.,**
                    **Defendants.**

**CAUSE NO.:**
**A-10-CA-00533-SS**

**O R D E R**

BE IT REMEMBERED on the 6th of October 2016, the Court held a hearing in the

above-styled cause, and the parties appeared by and through counsel. Before the Court are

Defendants' Motion for Summary Judgment [#312], Plaintiff's Response [#325] in opposition,

and Defendants' Reply [#339] in support, as well as Defendants' Letter Brief [#346] and

Plaintiff's Letter Brief [#347] in opposition. Having reviewed the documents, the arguments of

the parties at the hearing, the governing law, and the file as a whole, the Court now enters the

following opinion and order.



## Background

### I.        Patent-in-Suit

This case involves claims for infringement of United States Patent Number 6,393,158 ('158 Patent), which was issued on May 21, 2002 and is titled "Method and Storage Device of Expanding and Contracting Continuous Play Media Seamlessly." The litigation began in 2010 when MONKEYmedia filed separate suits against Defendants and Apple, Inc., alleging infringement of patents from two families: (1) the "Deemphasis Patents" (U.S. Patents No. 6,177,938, No. 6,219,052, and No. 6,335,730) and (2) the "Seamless Expansion Patents," which includes the patent-in-suit and two other patents (U.S. Patents No. 7,467,218 and No. 7,890,648). Both suits were consolidated for purposes of a third *Markman* hearing. *See* Order of Nov. 2, 2010 [#147]. On September 6, 2016, MONKEYmedia and Apple, Inc. stipulated to dismissal of their claims and counterclaims with prejudice in the related lawsuit. Order of Sept. 6, 2016 [#182], *MONKEYmedia, Inc. v. Apple, Inc.*, No. 1:10-CV-319-SS (W.D. Tex. Sept. 6, 2016). MONKEYmedia's claims against Defendants based on their alleged infringement of the '158 Patent remain.[1]

The '158 Patent describes a method for the playback of digitally stored multimedia content in which the user playing the multimedia content can choose to temporarily halt playback of the main content, play optional "expansion" content, then, at the conclusion of the expansion content, begin playing the main content once again. For example, a cue for "bonus content" might pop up on a television screen during the playing of a DVD movie, and if the user clicks on

---

[1] Although not at issue in this motion, MONKEYmedia's claims against Defendants based on their alleged infringement of one "Deemphasis Patent"—the '730 Patent—also remain. According to Defendants, while the parties have discussed stipulating to a judgment of non-infringement, efforts to do so have been "put aside while the remaining '158 patent was addressed." Mot. Summ. J. [#312] at 6 n.3.

the cue, the bonus content is played and the main content is paused. If the user does not click on the cue, the DVD movie continues to play.

At issue in this case are Claims 37, 40, and 41 of the '158 Patent (the asserted claims). MONKEYmedia contends Defendants are liable for contributing to and inducing the infringement of the asserted claims in connection with their sale of Blu-ray discs and DVDs. Claim 37 of the '158 Patent is illustrative of the specific claim language at issue, which provides for:

> A method for playing a stored content comprising:
>
> *providing a plurality of segments* which collectively comprise said stored content, wherein each of said segments has a first terminus and a second terminus; wherein content in each of said segments has a temporal flow from said first terminus to said second terminus, and *wherein at least one segment is associated with a plurality of links to a corresponding plurality of other of said segments*;
>
> playing said at least one segments with said temporal flows; determining prior to reaching said second terminus whether a content expansion is desired;
>
> *linking to an expansion segment* and playing said expansion segment if said content expansion is desired *and to a continuing segment* and playing said continuing segment if said content expansion is not desired, *where there is an additional link from said expansion segment to said continuing segment such that said continuing segment is played after said expansion segment has been playing*;
>
> wherein playing said segments further comprises highlighting an *expansion segment cue corresponding to one of said expansion links*; and wherein determining prior to reaching said second terminus whether a content expansion is desired further comprises determining whether said expansion segment cue is selected; and
>
> wherein said expansion segment cue is one of a plurality of expansion cues in an expansion cue container.

'158 Patent at col. 1 ll. 63–col. 2 ll. 24 (emphasis added). Claims 40 and 41 differ only in their last clause. The last clause of Claim 40 states:

> wherein the expansion segment cue is visual and changes in appearance if said expansion segment cue has been selected; and
>
> wherein the change in appearance of said expansion segment cue comprises expanding in size.

*Id.* at col. 2 ll. 63–67.

The last clause of Claim 41 specifies:

> wherein determining whether said expansion segment cue is selected comprises determining whether the user has made a motion to select said expansion cue without pushing a button on a selector device.

*Id.* at col. 2 ll. 12–15.

## II.   Procedural History

The Court, through Special Master Karl Bayer, held its first of three *Markman* hearings in this case on March 1–2, 2011. The March 1–2, 2011 *Markman* hearing concerned the Deemphasis Patents. The Special Master issued his Report and Recommendation on claim construction on September 5, 2012, which the Court adopted on February 22, 2013.

On June 28–29, 2011, the Court, through the Special Master, held the second *Markman* hearing, which concerned the Seamless Expansion Patents. No Report and Recommendation issued following the hearing, because shortly thereafter, the Court stayed both cases pending the outcome of the United States Patent and Trademark Office (PTO)'s reexamination of the Seamless Expansion Patents. *See* Order of July 27, 2011 [#228]. During reexamination, the PTO rejected Claims 1–34 of the '158 Patent as unpatentable; MONKEYmedia did not appeal the PTO's finding to the Federal Circuit, and the PTO subsequently canceled those claims. MONKEYmedia formally disclaimed all claims in the other two Seamless Expansion Patents, ending the reexamination proceedings.

Claims 35–41 of the '158 Patent, which represent seven new claims based on the same specification and figures as the previously canceled claims, were permitted by the PTO after reexamination. On MONKEYmedia's motion, the Court lifted the stay and permitted MONKEYmedia to file a supplemental complaint. *See* Order of June 13, 2014 [#260]. On October 30–31, 2014, the Court, through the Special Master, held the third *Markman* hearing. The Special Master issued his Report and Recommendation on claim construction on February 5, 2015, which the Court adopted on August 11, 2015 with modifications to the construction of terms "link," "linking," and "expansion link." *See* Order of Aug. 11, 2015 [#305].

Defendants filed the instant motion for summary judgment on July 21, 2016, arguing the provision of bonus content on their Blu-ray discs and DVDs does not infringe the '158 Patent and therefore Defendants cannot be held liable for inducement or contributory infringement. *See* Mot. Summ. J. [#312]. The parties fully briefed the motion, and it is now ripe for the Court's consideration.

## Analysis

### I. Legal Standard

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable

to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id*. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id*.

"Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id*. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

## II.    Application

Defendants argue they are entitled to summary judgment on MONKEYmedia's inducement and contributory infringement claims because (1) their Blu-ray discs lack four discrete limitations contained in the asserted claims, and (2) MONKEYmedia has failed to establish a fact issue as to whether the four specifically identified DVDs infringe the asserted claims. "Summary judgment of non-infringement requires a two-step analytical approach." *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1304 (Fed. Cir. 1999). First, the district court must determine the meaning and scope of the asserted patent claims. *Id.* Second, the district court must determine whether all of the claim limitations are present, either literally, or by equivalent, in the accused device. *Innovention Toys, LLC v. MGA Entm't, Inc.*, 637 F.3d 1314, 1318–19 (Fed. Cir. 2011). "[A]n accused product or process is not infringing unless it contains each limitation of the claim, either literally or by an equivalent." *Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1358 (Fed. Cir. 2005). Therefore, "summary judgment of non-infringement can only be granted if, after viewing the alleged facts in the light most favorable to the non-movant, there is no genuine issue whether the accused device is encompassed by the claims." *Pitney*, 182 F.3d at 1304.

Because the Court finds there are fact issues as to whether each limitation is present in the accused Blu-ray discs, and whether the accused DVDs infringe Claims 40 and 41 of the '158 Patent, Defendants' motion for summary judgment is denied in part. As to MONKEYmedia's claim that Defendants' DVDs infringe Claim 37, Defendants' motion is granted in part.

## A.    Direct Infringement

Defendants move for summary judgment on MONKEYmedia's claims of inducement and contributory infringement by first arguing there is no evidence of direct infringement. *See In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1333 (Fed. Cir. 2012) (internal quotations and citations omitted) ("It is axiomatic that there can be no inducement or contributory infringement without an underlying act of direct infringement."); *see also Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1272 (Fed. Cir. 2004) ("Indirect infringement, whether inducement to infringe or contributory infringement, can only arise in the presence of direct infringement . . . ."). A collection of movies contained on Blu-ray discs and DVDs are at issue in this case.[2] Because the Court concludes the Blu-ray discs and DVDs embody two potentially distinct methods of infringing the asserted claims, *see infra* Section II.A.ii., the Court addresses Defendants' argument as to the accused Blu-ray discs and DVDs separately.

### i.    Blu-ray Discs

Defendants contend Blu-ray discs lack the following claim limitations: (1) segments, (2) expansion links, (3) links from expansion segments to continuing segments, and (4) expansion segment cues.

#### 1.    Segments

According to Defendants, the accused Blu-ray discs do not infringe the asserted claims because the Blu-ray discs lack segments as required by the claim language. To determine

---

[2] The parties agree that MONKEYmedia's infringement claims rest upon representative Blu-ray discs of the following movies: *Frozen, Planes, How to Train Your Dragon 2, The Hunger Games: Catching Fire, Iron Man 3, Fast and Furious 6,* and *The Hobbit: An Unexpected Journey.* Moreover, MONKEYmedia has specifically identified four DVDs of the following movies: *The Matrix, The X-Files, Titanic,* and *Spy Game.* In analyzing whether Defendants' DVDs infringe the asserted claims, the parties treat *The Matrix* DVD as a representative sample of the accused DVDs. *See, e.g.,* Mot. Summ. J. [#312] at 29; Resp. [#325] at 18.

whether "segments" are present in the accused Blu-ray discs, the Court must compare the Court's construction of that term to its analysis of the Blu-ray discs. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (explaining the second step of the two-step infringement analysis requires a district court to "compar[e] the properly construed claims to the device accused of infringing"). In its claims construction order, the Court construed "segment" to mean "a sequence of stored content that is fixed and predetermined prior to playing." Order of Aug. 11, 2015 at 12, 16. "Stored content" was construed to mean "content that minimally contains images or text that can be displayed, and is stored." *Id.* at 10, 12.

To defeat Defendants' motion, MONKEYmedia points to expert testimony from Chris Armbrust, who concluded Blu-ray discs are authored with a plurality of segments. *See* Sealed Armbrust Decl. [#333]. According to Armbrust, video is presented as a sequence of still frames which creates the perception of motion when played quickly. *Id.* ¶ 25. As a general matter, most videos are played anywhere from 24 frames per second to 60 frames per second. *Id.* Thus, there may be many kinds of predetermined segments on Blu-ray discs that meet the Court's definition of "segment." For example, the smallest segment on a disc could be the sequential pair of frames, while the largest segment on a disc could be the entire movie. *See id.* ¶ 26. Other segments which fall between these two extremes could be a "group of pictures" (GOP),[3] clips, chapters, and playlists. *Id.* MONKEYmedia has provided sufficient evidence to show these

---

[3] To optimize compression and quality, video encoders use three different types of frames: I, P, and B. Sealed Armbrust Decl. [#333] ¶ 26. Thus, in a 24 frames per second video, encoders will use a full image (I) frame every 12 frames with a sequence of smaller differential frames, predictive (P) or bi-directional (B) frames in between. *Id.* A 12-frame set beginning with an I frame is typically called a "group of pictures" (GOP). *Id.* According to Armbrust, "[e]ach picture in a GOP is a frame of video that has a sequential link to the next frame, and in the same way, each GOP is sequentially linked to the next GOP." *Id.* Armbrust further explained that because frames and GOPs may not be stored on the disc in the order in which they are played by the user, the predetermined sequential links between successive frames and GOPs are important. *Id.* Armbrust's testimony creates, at the very least, a fact issue as to whether video encoding creates multiple "segments" that fall within the Court's construction of that term.

examples consists of a predefined sequence of video frames which have a fixed and predetermined first and second terminus on the disc prior to playing.

Defendants, for their part, provide little in the way of technical evidence in support of their argument that Blu-ray discs lack segments. Instead, Defendants simply contend the continuous availability of expansion content throughout the movie proves the non-existence of segments.[4] However, this contention does not establish the absence of segments as a matter of law. Indeed, one plausible explanation for the continuous availability of expansion content is that Defendants chose to make this content available during most or all of the segments of main content. As Defendants' own expert admitted, each particular point in a movie where expansion content is available reflects a choice on the part of the person authoring the disc to make that expansion content available. *See* Resp. [#325-3] Ex. 3 (Johnson Excerpted Dep.) at 42:9–17.[5] Because Defendants have failed to proffer any reason why the choice to associate most or all of the segments in a movie with an expansion link establishes the non-existence of segments, the Court finds a fact issue remains as to whether segments exist.

### 2. Expansion Links

Defendants next contend Blu-ray discs lack "expansion links" and therefore fall outside the scope of the asserted claims, because the continuous availability of expansion content supposedly proves expansion links, like segments, do not exist. In its claims construction order,

---

[4] MONKEYmedia challenges Defendants' premise as factually faulty, claiming instead that not every Blu-ray disc makes expansion content available for the whole movie. Indeed, MONKEYmedia's expert pointed to the I, Robot Blu-ray disc as an example of a disc in which particular expansion content is available for only portions of the movie. Sealed Armbrust Decl. [#333] ¶¶ 62–66, 77.

[5] Throughout their motion, Defendants rely on testimony from their expert, Mark Johnson, to establish the absence of segments, expansion links, and links from expansion segments to continuing segments. *See* Mot. Summ. J. [#312-1] Ex. 1 (Johnson Decl.). Notably, however, Defendants did not ask Johnson to furnish the Court with the details of any technical analysis he performed. Instead, Johnson simply reported on his observations of the Blu-ray discs and DVDs. *See id.* Ex. 2 (Johnson DVD Demonstration). Given the 50,000 foot view from which Johnson analyzed Defendants' supposedly non-infringing Blu-ray discs and DVDs, the Court finds Johnson's testimony largely unhelpful in establishing the absence of a fact issue.

the Court construed "link" to mean "a predetermined connection from one specified segment to another specified segment." Order of Aug. 11, 2015 [#305]. Armbrust, MONKEYmedia's expert, testified that all interactivity on Blu-ray discs is "tightly controlled and fixed in place with predetermined links before any disc is finalized for sale." Sealed Armbrust Decl. [#333] ¶ 39. He concluded that predetermined, interactive links between segments of main content, segments of expansion content, and continuing segments of main content must exist on each Blu-ray disc. *Id.* ¶¶ 53–60, 74–76. Defendants provide no expert testimony in rebuttal. For the same reasons the Court found this argument unpersuasive as to the supposed non-existence of segments, it similarly finds it unpersuasive here. The fact that Defendants may have decided to associate expansion links with most or all segments of a movie does not establish the non-existence of expansion links any more than it proves the non-existence of the segments themselves. A comparison of the asserted claim language with the accused instrumentalities plainly reveals a fact issue remains as to whether expansion links exist.

### 3.    Links from Expansion Segments to Continuing Segments

Defendants further contend there is no fixed and predetermined link from expansion segments to continuing segments of main content after an optional content expansion has occurred. In its claim construction order, the Court concluded the terms "links" and "expansion links" "encapsulates how, in order to return to and play the next continuous play media segment following an expansion, the content player follows the author-defined connections between individual data structures . . . back up through the data structure tree to the original continuous play media segment, 'implicitly deriving' the link between the original segment and next segment of content." Order of Aug. 11, 2015 [#305] at 18. These "fixed and predetermined links" are also present in an alternative embodiment of the invention where "the author can

program the content player to store a link between a segment of main content and a continuing segment on a stack, and after the presentation of expansion material is complete, direct the player to retrieve that link and follow it to the continuing segment." *Id.*

Notably, Defendants' own expert alluded to the presence of links from expansion content to continuing segments in the *Frozen* Blu-ray disc. When asked how a user could "go from watching snowflakes sniped No. 1 to watching Meet Kristoff No. 1, the deleted scene that you elected," Johnson testified:

> The -- *the authoring of the disc in that particular implementation includes a pop-up menu with a collection of graphics and the necessary java code to allow me to interact with my player such that those interactions get reflected to the java application* that's running so that that application could then show me the list of the options that are available to me and respond to my further interactions to decide which item I wished to play out of that list of options. And then from that, *it's able to essentially store my current location within the film so that it would know where to come back to.* It then proceeds to play the additional content -- in this case the Meet Kristoff video. It responds to numerous events being triggered by operations within the player so that it -- it's able to determine when that content has finished playing as well as to offer me additional options for skipping or fast-forwarding or what have you. And then if I've done nothing, when it determines -- *when the BD-Java application has determined that that Meet Kristoff has finished [playing,] it then does a whole collection of additional operations that essentially launch the -- the movie playlist again, and once that playlist has loaded, resets the media time to the position that I had left from or close to the position that I had left from and begin playing again that point.*

Johnson Excerpted Dep. at 81:8–82:8 (emphasis added).

Moreover, Armbrust testified the operation of Blu-ray discs necessarily involves predetermined links from expansion segments back to continuing segments of main content. Sealed Armbrust Decl. [#333] ¶¶ 73–76, 79–80. Based on the foregoing, the Court concludes MONKEYmedia has shown a fact issue remains as to whether the accused Blu-ray discs contain fixed and predetermined links from expansion segments to continuing segments of main content.

### 4.    Expansion Segment Cues

Finally, Defendants contend the accused Blu-ray discs do not infringe the asserted claims because Blu-ray discs lack "expansion segments cues." The crux of Defendants' argument is their assumption that "Pop-up Menus are not cues." In its claims construction order, the Court defined "cue" as "[a] prompt or guiding suggestion." Order of Aug. 11, 2015 [#305] at 8. Pop-up Menus, which appear when a user presses the Pop-Up Menu button, contain menu items that describe each segment of expansion content available to the user. MONKEYmedia points to "Meet Kristoff No. 1"—discussed in Johnson's declaration and deposition—as an example of a "cue." Johnson expressly acknowledged the operation of a Java application run by the Blu-ray player will "show me the list of the options that are available to me and respond to my further interactions to decide which item I wished to play out of that list of options." Johnson Excerpted Dep. at 81:13–16. Defendants have failed to explain how a menu item contained in a Pop-up Menu such as "Meet Kristoff No. 1" is anything other than a "prompt or guiding suggestion" that points to the availability of an expansion segment.

Moreover, Armbrust, in concluding Pop-up Menus of the accused Blu-ray discs constitute "cue-containers" and their individual menu items constitute "cues," testified cues are associated with particular segments just as expansion segments themselves are associated with particular segments. Sealed Armbrust Decl. [#333] ¶¶ 78–80. During the authoring process, the video encoder decides which cue and which content expansion will be made available to a user during a particular segment. As Armbrust noted, "[t]here is no prohibition in the claims against associated expansion links with . . . most or even all segments that comprise a Movie." *Id.* ¶ 78. Thus, as with segments and expansion links, the fact that Defendants may have decided to associate cues with most or all segments of a movie does not alter the essential nature of a cue.

Nevertheless, Defendants insist cues are not present on the accused Blu-ray discs because the user "*must* actively seek out bonus content by bringing up a menu." Mot. Summ. J. [#312] at 20. According to Defendants, the addition of a user input step in the accused Blu-ray discs defeats MONKEYmedia's infringement claims, because the asserted claims do not require a user to actively seek out bonus content.

As an initial matter, however, the asserted claims do not specify whether the user must actively seek out bonus content or whether it appears automatically without any user interaction. During the claims construction process, Defendants attempted to add the additional limitation of "without user input" to the phrase "playing said segments further comprises highlighting an expansion segment cue." *See* Defs.' Notice of Disputed Claim Construction Chart [#289] at 30. The Special Master rejected this construction, instead concluding the term could be readily understood by a jury without special construction, and the Court agreed. *See* Order of Aug. 11, 2015 [#305] at 8.

Moreover, the asserted claims at issue use the signal "comprising," which is "generally understood to signify that the claims do not exclude the presence in the accused [] method of factors in addition to those explicitly recited." *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 811 (Fed. Cir. 1999); *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1271 (Fed. Cir. 1986), *abrogated on other grounds by Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed.Cir.2008) (en banc) (explaining the term "comprises" opens a method claim to the inclusion of steps in addition to those stated in the claims). Thus, Defendants' argument that the accused Blu-ray discs do not infringe simply because they employ an additional step—where the user actively seeks out bonus content by bringing up a menu—fails to establish non-infringement as a matter of law.

Yet, even assuming the asserted claims excluded methods which require the additional user input step, there is evidence to suggest many of the accused Blu-ray discs (and all of the DVDs) do not require user input for the "cue" to appear. In his declaration, Armbrust identified at least one exemplar movie for each Defendant in which cues automatically appear during selected segments without any user action. *See* Sealed Armbrust Decl. [#333] ¶¶ 62–72, 82–92. Because MONKEYmedia has proffered facts which support its claim that the accused Blu-ray discs contain expansion segments cues, the Court DENIES Defendants' motion for summary judgment with regard to the accused Blu-ray discs.

### ii.   DVDs

Defendants also seek summary judgment on MONKEYmedia's claims for infringement based on at least four DVDs released between 1999 and 2006. As an initial matter, MONKEYmedia challenges the propriety of Defendants' effort to treat DVDs separately from Blu-ray discs. According to MONKEYmedia, if the Court finds a fact issue exists as to whether the accused Blu-ray discs infringe Claims 37, 40, and 41, summary judgment on whether the DVDs infringed the asserted claims is improper. MONKEYmedia cites *Lucent Technologies, Inc. v. Gateway, Inc.* for the proposition that "a finding of infringement can rest on as little as one instance of the claimed method being performed during the pertinent time period." 580 F.3d 1301, 1317 (Fed. Cir. 2009). The Court does not question this established tenant of patent law, but rather its bearing on this case. MONKEYmedia itself has recognized that Blu-ray discs and DVDs are programmed differently, and therefore embody two potentially distinct methods of infringing the asserted claims. *See* Pl.'s Brief [#347] at 2–3. Thus, a finding that a fact issue exists as to whether Blu-ray discs infringe the asserted claims does not shield MONKEYmedia from a finding of non-infringement as to the DVDs.

To establish infringement, MONKEYmedia points to the "Follow the White Rabbit" feature of the exemplar DVD *The Matrix*. The "White Rabbit" feature is a feature which—once enabled prior to watching the movie—provides a "white rabbit" icon at different points in the movie which the user can select to view bonus content. In support of their motion for summary judgment, Defendants contend MONKEYmedia can point to no specific instances of any user viewing the "White Rabbit" feature in such a manner that infringes the asserted claims. However, the Federal Circuit permits courts and juries to consider circumstantial evidence, such as the dissemination of instruction manuals, in determining whether a person actually performed the claim method. *See Lucent*, 580 F.3d at 1318; *Alco Standard Corp. v. Tenn. Valley Auth.*, 808 F.2d 1490, 1503 (Fed. Cir. 1986) ("Although the evidence of infringement is circumstantial, that does not make it any less credible or persuasive."). In this case, MONKEYmedia has proffered sufficient evidence to show *The Matrix* DVD provides explicit instructions for how to use the "White Rabbit" feature when viewing the DVD. Indeed, this special feature is clearly advertised on the back of the DVD box and is accessible from the "Special Features" option, which plainly explains the "Follow the White Rabbit" feature "will play movie with viewable hidden special effects footage" which will take the user "on a journey revealing secrets of The Matrix." The Court agrees with MONKEYmedia that it is implausible for Defendants to suggest no person has ever followed those instructions. Moreover, MONKEYmedia's expert, Utpal Mukul Dholakia performed a survey of movie viewers and found considerable use of the seamless expansion feature on *The Matrix* DVD.[6] Resp. [#325-2] Ex. B (Dholakia Decl.) ¶¶ 37–39. Taken together,

---

[6] Dholakia's study revealed around 24.6% of the study's respondents who have watched *The Matrix* DVD since March 1, 2013 used seamless expansion when watching the movie. Dholakia Decl. ¶ 36. The overall percentage of respondent DVD viewers for the four DVD movies at issue (*The Matrix*, *The X-Files*, *Titanic*, and *Spy Game*) who used seamless expansion since March 1, 2013 was 21.7%. *Id.* ¶ 38.

this direct and circumstantial evidence of users using Seamless Expansion while watching any of the four movies on DVD precludes summary judgment.

Nevertheless, Defendants argue that even assuming MONKEYmedia can point to specific instances of users selecting the "White Rabbit" feature while watching the exemplar DVD *The Matrix*, the operation of the "White Rabbit" feature does not infringe the asserted claims. The Court analyzes this argument in conjunction with the specific language of each claim below.

### 1.      Claim 37

Claim 37 provides for a method of playing stored content which contains segments, expansion links, links from expansion segments to continuing segments, and expansion segment cues, where the expansion segment cue "is one of a plurality of expansion cues in an expansion cue container." '158 Patent at col. 2 ll. 23–24. While the Court finds there is a fact issue as to whether the accused Blu-ray discs infringe Claim 37, the Court finds no similar fact issue exists as to whether *The Matrix* DVD infringes Claim 37. Indeed, the only DVD MONKEYmedia identifies as potentially infringing Claim 37 is *The Matrix* DVD, and MONKEYmedia admits *The Matrix* DVD does not contain a "cue container" as required by Claim 37. MONKEYmedia argues that it should be given the opportunity to consider whether other DVDs contain the claim element. However, this case was filed over six years ago, and discovery in the current installment of this lawsuit has been ongoing for over a year. The fact discovery deadline expired almost three months ago. Although the expert discovery deadline is not until January 27, 2017, MONKEYmedia was made aware of the potentially infringing DVDs over eight months ago, when Defendants provided MONKEYmedia with thousands of Blu-ray discs and DVDs that contain a movie and have bonus features available for selection while playing the movie.

MONKEYmedia has thus had the better part of a year to comb through these DVDs to identify the potentially infringing discs. MONKEYmedia cannot escape summary judgment by claiming it will eventually create a fact issue as to whether presently unidentified DVDs infringe Claim 37. Accordingly, the Court grants summary judgment on the issue of whether Defendants' DVDs infringe Claim 37.[7]

### 2.    Claim 40

Claim 40 requires a "change in appearance of [the] expansion segment cue" and the change must "comprise[] expanding in size." Defendants claim MONKEYmedia has failed to show the "White Rabbit" special feature on *The Matrix* DVD meets this claim language. On *The Matrix* DVD, when a user elects to view the expansion segment by "mechanically pressing a physical button a button-based remote control or by making a motion such as tapping on a . . . touchscreen remote," the white rabbit cue changes colors from white to green. Sealed Armbrust Decl. [#333] ¶ 83. According to Defendants, MONKEYmedia seeks to meet the limitation of Claim 40 by "concoct[ing] a theory that expanding in size can encompass changing the color of the cue." Mot. Summ. J. [#312] at 28. This characterization misrepresents MONKEYmedia's argument, however. Armbrust clearly testified in his declaration that "the change in appearance of [the] expansion segment cue also literally comprises expanding in size." Sealed Armbrust Decl. [#333] ¶ 84. In support of this conclusion, Armbrust explained he imported both white and green screen shots of the rabbit into Photograph and "used a layer blend mode of 'Difference' to reveal that the green rabbit is actually larger than the white rabbit." Armbrust observed that there was a green halo around a gray composite rabbit, and therefore concluded that "[i]f the white and

---

[7] To clarify, the Court's grant of summary judgment applies to all of the accused DVDs, even though the Court only examined *The Matrix* DVD in detail. Throughout this lawsuit, both parties have treated *The Matrix* DVD as a representative sample of the accused DVDs. *See, e.g.*, Mot. Summ. J. [#312] at 29; Resp. [#325] at 18. Because MONKEYmedia admits *The Matrix* DVD does not infringe Claim 37—and it has failed to identify other DVDs that do—the Court grants summary judgment on MONKEYmedia's claim that Defendants' DVDs infringe Claim 37.

green rabbits were the same size, [] there would only be a gray rabbit without any green halo." *Id.* This testimony is sufficient to preclude summary judgment.

### 3.     Claim 41

Claim 41 requires a user make "a motion to select [an] expansion cue without pushing a button on a selector device." To establish non-infringement of Claim 41 as a matter of law, Defendants point to the supposed lack of evidence proving users used a touchscreen device in connection with playing any of the accused Blu-ray discs or DVDs. MONKEYmedia insists it has met the relevant limitations of Claim 41 by showing that users utilize non-button, touch-screen remotes when selecting an expansion cue on an accused DVD.

In his declaration, Armbrust concluded that given "remote controls that ship with DVD and Blu-ray Disc players are generally inferior to touch-screen remote controls" and "the widespread availability of non-button-based interfaces for engaging media since at least 2013," "viewers are more likely than not to use a remote control of their own choosing than the remote control that shipped with their player, and that their election of expansion cues to view expansion content has a good chance of not involving the pressing of mechanical buttons." Sealed Armbrust Decl. [#333] ¶ 85. Armbrust does not fully explain the bases for these assumptions, and thus standing alone, his testimony may not be sufficient to defeat summary judgment. However, MONKEYmedia has also provided concrete survey evidence from Dholakia which shows that users are in fact using non-button, touch-screen remotes to meet the claim limitations with the accused discs.[8] Dholakia Decl. ¶¶ 47–52. Taken together, this evidence is sufficient to defeat summary judgment.

---

[8] According to Dholakia, "approximately 46%–55% of the 238 DVD watchers in the survey who performed Seamless Expansion on any of the DVDs listed . . . since March 1, 2013 did so by making a motion to select an expansion cue without pushing a button a selector device." Dholakia Decl. ¶ 51. He further concluded "approximately 46%–55% of the larger population of United States Blu-ray owners 18 years of age and older who

Defendants argue in the alternative, however, that "tap[ing] to click" and using a touchscreen is not a "motion to select an expansion cue without pushing a button." The Court disagrees, and instead finds a fact issue exists as to whether the claim language excludes this type of motion. Summary judgment is therefore inappropriate.

## B.    Indirect Infringement

Even assuming MONKEYmedia has established a fact issue exists as to whether users viewing the accused DVDs directly infringed Claims 40 and 41, Defendants argue there is a dearth of evidence proving Defendants induced or contributorily infringed by encouraging users to purchase DVDs and perform the asserted method claims.[9]

To establish induced infringement, MONKEYmedia must show Defendants actively and knowingly facilitated the users' infringement. *See* 35 U.S.C. § 271(b). Defendants admit inducement may be shown by "advertising an infringing use or instructing how to engage in an infringing use." Mot. Summ. J. [#312] at 35 (quoting *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936 (2005)). As explained above in Section II.A.ii., MONKEYmedia has proffered (1) direct evidence demonstrating the exemplary DVD, *The Matrix*, contains instructions and packaging that tout the seamless expansion feature, and (2) circumstantial evidence suggesting non-button, touch-screen remotes were used in viewing the "White Rabbit" feature of *The Matrix* DVD. *See supra* Section II.A.ii.; Sealed Armbrust Decl. [#333] ¶¶ 88–92. The Court therefore finds a fact issue exists as to whether Defendants actively and knowingly facilitated infringement of Claims 40 and 41.

---

performed Seamless Expansion on any of the DVDs listed . . since March 1, 2013 did so by making a motion to select an expansion cue without pushing a button a selector device." *Id.* ¶ 52.

[9] Although Defendants contend the accused Blu-ray discs do not directly infringe the asserted claims, Defendants do not challenge their liability for indirectly infringing the asserted claims based on their sale of the accused Blu-ray discs. *See* Mot Summ. J. [#312] at 35–39.

To establish contributory infringement, MONKEYmedia must show Defendants sold or offered to sell something that is a component of the claimed invention. *See* 35 U.S.C. § 271(c). Defendants contend MONKEYmedia has failed to establish contributory infringement, because there are substantial non-infringing uses of the DVDs at issue. For instance, Defendants suggest playing *The Matrix* DVD without activating the "White Rabbit" feature presents a substantial, non-infringing use. However, Defendants misconstrue the relevant law. As the Federal Circuit has noted, "a particular tool within a larger software package may be the relevant 'material and apparatus' when that tool is a separate and distinct feature. *See i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 849 (Fed. Cir. 2010) (quoting *Lucent*, 580 F.3d at 1320–21). In this case, the "White Rabbit" feature in *The Matrix* DVD is the relevant component for consideration. Thus, it is immaterial that users can watch a DVD without performing seamless expansion. Focusing instead on whether there is a substantial non-infringing use of the seamless expansion features, Defendants have failed to show they are entitled to summary judgment on this issue. Moreover, MONKEYmedia has asserted claims for both contributory infringement and inducement. Even if Defendants had established a substantial, non-infringing use of seamless expansion features, "the existence of a substantial non-infringing use does not preclude a finding of inducement." *See Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1364 (Fed. Cir. 2012).

Finally, Defendants claim they lacked any knowledge that the users' actions would constitute patent infringement. Actual knowledge that the patent would be infringed is required for both contributory and induced infringement. *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1312 (Fed. Cir. 2005) (quoting *Golden Blount, Inc. v. Robert H. Peterson Co.*, 365 F.3d 1054, 1061 (Fed. Cir. 2004)) ("In order to succeed on a claim of contributory infringement, in addition to proving an act of direct infringement, plaintiff must

show that defendant 'knew that the combination for which its components were especially made was both patented and infringing' and that defendant's components have 'no substantial non-infringing uses.'"); *Global–Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2068 (2011) (concluding liability for induced infringement "requires knowledge that the induced acts constitute patent infringement"). Defendants have been litigating the '158 Patent for years and were involved in the very re-examination that gave rise to the asserted claims. The Court is therefore unconvinced by Defendants' argument that they could not anticipate—let alone possess actual knowledge—that the users would perform the claimed methods and infringe Claims 40 and 41. At the very least, the Court finds a fact issue exists as to whether Defendants knew the users' actions amounted to patent infringement.

**Conclusion**

In sum, the Court finds fact issues exist as to whether Defendants' Blu-ray discs contain (1) segments, (2) expansion links, (3) links from expansion segments to continuing segments, and (4) expansion segment cues, as required by Claims 37, 40, and 41 of the '158 Patent. It further finds fact issues exist as to whether Defendants' DVDs infringe Claim 40, which provides for the "change in appearance" and size of an expansion segment cue, and Claim 41, which requires a user make "a motion to select [an] expansion segment cue without pushing a button a selector device." Accordingly, with the exception of MONKEYmedia's claim that Defendants' DVDs infringe Claim 37 of the '158 Patent, MONKEYmedia's multifarious claims for indirect infringement of the '158 Patent survive Defendants' motion for summary judgment.

Accordingly,

IT IS ORDERED that Defendants' Motion for Summary Judgment [#312] is GRANTED IN PART and DENIED IN PART as described in this opinion.

SIGNED this the 8th day of December 2016.

SAM SPARKS
UNITED STATES DISTRICT JUDGE